

**ORDERED in the Southern District of Florida on October 20, 2022.**



**Erik P. Kimball, Judge**
**United States Bankruptcy Court**
_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                    Case No. 20-23376-EPK
                                                              Chapter 7
XIAO LING,

      Debtor.
_____/
GUANG ZU WANG,

      Plaintiff,
v.
                                                              Adv. Proc. No. 21-01089-EPK
XIAO LING,

      Defendant.
_____/

### Memorandum Opinion

    This adversary proceeding came before the Court for trial on May 26 and 27, 2022,

upon the *Amended Complaint* [ECF No. 77] (the "Complaint") filed by Guang Zu Wang

against Xiao Ling.

    In late 2016, Mr. Wang and Mr. Ling agreed to form US Fine Foods, a joint venture

for exporting live crabs to China. Consistent with a written agreement and promissory notes,

Mr. Wang advanced a total of $148,109.51 to Mr. Ling in the form of investments in and advances on behalf of US Fine Foods and personal loans to Mr. Ling. Mr. Wang never received anything back from the joint venture or from Mr. Ling.

Mr. Ling filed a voluntary chapter 7 petition on December 8, 2020. Through this adversary proceeding, Mr. Wang seeks to have his claim against Mr. Ling excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) and (B). Among other things, Mr. Wang alleges that, from the start, Mr. Ling never intended to perform his contractual obligations relating to the joint venture, never intended to repay Mr. Wang's personal loans, hid the extent of his financial distress, and made a false written statement regarding Mr. Ling's or an insider's financial condition.

The Court considered the evidence presented at trial, the arguments of counsel, and post-trial briefs. ECF Nos. 123 and 124. The Court finds that Mr. Ling enticed Mr. Wang to invest in and otherwise support a supposed joint venture and to loan substantial funds to Mr. Ling personally, with promises that Mr. Ling would provide necessary equipment and his substantial expertise to further the joint venture, and with promises to repay the personal loans, but Mr. Ling never intended to follow through on the joint venture and never intended to pay Mr. Wang back. Mr. Wang relied on these false agreements and representations to his detriment. For these reasons, as discussed more fully below, the Court will except Mr. Wang's claim from the discharge in this case.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

**Findings of Fact**

While Mr. Wang is the plaintiff in this case and a party to the relevant written agreement and promissory notes with Mr. Ling, Mr. Wang's spouse, Hui Fang Li, interacted with Mr. Ling for Mr. Wang. The parties do not dispute that she passed Mr. Ling's statements

on to her husband and that she acted on Mr. Wang's behalf during the events giving rise to this litigation. Any actions she took are attributable to Mr. Wang. In the Court's findings of fact, Ms. Li's statements and actions are treated as statements and actions of Mr. Wang and Mr. Ling's communications with Ms. Li are treated as communications with Mr. Wang.

Beginning in the mid-2000s, Mr. Ling developed a successful business as a seafood supplier and exporter under the corporate name Euam Fisheries. At times, Mr. Ling brought home $300,000 to $400,000 per year. Mr. Wang and Ms. Li owned a restaurant and sourced seafood from Mr. Ling. The parties first met in 2013.

Mr. Ling's business suffered a significant setback in 2016. In April 2016, Euam Fisheries was sued for $1.5 million. As the year progressed, faced with impending financial ruin, Mr. Ling desperately needed cash. In December 2016, Mr. Ling proposed a joint venture to combine investment from Mr. Wang with Mr. Ling's claimed significant experience and his existing equipment for the purpose of exporting live blue crabs to China, in what Mr. Ling described as a lucrative market. In furtherance of this new joint venture, Mr. Ling and Mr. Wang executed the *Agreement between Xiao Ling and Guangzu Wang in Joint Operation of Export of Blue Crabs to Chinese Market* dated December 16, 2016 (the "Joint Venture Agreement"). The joint venture company was to be called US Fine Foods.

Under the Joint Venture Agreement, Mr. Wang agreed to initially invest $40,000 to be used by Mr. Ling to upgrade his existing equipment and purchase inventory for the joint venture.  This was to be followed by an additional $20,000 investment in the new enterprise. In return, conditioned on receipt of the initial $40,000, Mr. Ling promised to provide cultivating equipment, refrigerators, and freezers for use by the joint venture. Mr. Wang and Mr. Ling agreed to share the profits equally.

Mr. Wang also agreed to make a personal loan to Mr. Ling in the amount of $20,000, ostensibly to provide Mr. Ling with working capital for Euam Fisheries. Mr. Ling claimed

Euam Fisheries was suffering from temporary cash flow concerns but was otherwise healthy. This was far from the truth.

In mid-December 2016, Mr. Wang provided the $20,000 personal loan to Mr. Ling in cash and received a promissory note from Mr. Ling. A little over a month later, in late January 2017, Mr. Wang completed the initial $40,000 deposit into the bank account of US Fine Foods, which triggered Mr. Ling's obligations under the Joint Venture Agreement to provide cultivating equipment, refrigerators, and freezers to the joint venture.

Based on the evidence admitted in this case, from the start Mr. Ling had no intention to make good on his promises in the Joint Venture Agreement or to repay Mr. Wang's personal loans. Cash starved and greatly in debt, but concealing this situation from Mr. Wang, Mr. Ling's goal was to get Mr. Wang's money and use it as he saw fit. That is exactly what he did. Mr. Wang never received a dime from Mr. Ling.

Mr. Ling testified that he never provided use of the equipment he promised for the joint venture because Mr. Wang's $40,000 initial investment did not entitle Mr. Wang to fifty percent ownership of equipment that Mr. Ling valued at $314,000 to $500,000. But Mr. Wang has never claimed entitlement to a fifty percent ownership interest in any equipment. Mr. Wang required only that Mr. Ling make the cultivating equipment, refrigerators, and freezers available to the joint venture as the parties agreed in the Joint Venture Agreement. Mr. Ling's testimony on this issue was not credible and was not supported by the parties' own written agreement.

Mr. Ling also testified that he had no obligations under the Joint Venture Agreement because Mr. Wang had not notified Mr. Ling that he had completed the $40,000 initial deposit into the joint venture account. This testimony was laughably not credible. The Joint Venture Agreement requires no such formal notice. It is obvious that Mr. Ling knew that the initial $40,000 investment was completed because he took all of the money for himself. Mr. Wang's

4

investments were the only source of funds in the joint venture account. As soon as Mr. Wang made deposits into the joint venture account, Mr. Ling transferred the funds to his personal bank account or made cash withdrawals. Mr. Ling used those funds for his own business, Euam Fisheries, and for personal expenses, and not for the joint venture as he had promised.

In the first week of January 2017, even before Mr. Wang had completed the initial $40,000 joint venture deposit, Mr. Ling asked for an additional $60,000 personal loan. Mr. Wang was only able to provide $40,000, which came from his son's college savings account and a $17,000 loan from a friend. In exchange, Mr. Ling provided two additional promissory notes in the aggregate amount of $40,000. At the time, Mr. Wang had no reason to believe Mr. Ling was other than an honest businessman with temporary cash flow concerns. Mr. Wang knew nothing of Mr. Ling's dire financial status or the enormous lawsuit against Euam Fisheries.

In February 2017, Mr. Ling submitted an application for seafood export to the National Oceanic and Atmospheric Administration ("NOAA") on behalf of US Fine Foods. The NOAA Seafood Inspection Program certifies the safety and quality of seafood exports from the United States to many countries including China. NOAA rejected US Fine Foods' application. Mr. Ling testified that NOAA rejected the application because the Food and Drug Administration ("FDA") had not certified US Fine Foods' plant as US Fine Foods did not own the plant and its operation was less than six months old. Mr. Ling testified that he did not know of the futility of US Fine Foods's application to NOAA as he did not realize there were new seafood import regulations for China. This makes no sense as, based on Mr. Ling's own testimony on the reasons NOAA rejected US Fine Foods' application, whether China placed new restrictions on seafood import had no bearing on whether NOAA would even consider US Fine Foods' application. Mr. Ling did not initially inform Mr. Wang of the application to NOAA or its denial.

Mr. Ling's application to NOAA on behalf of US Fine Foods was his sole act in furtherance of the joint venture. The Court does not believe that Mr. Ling ever expected the application to be successful. In light of all the other evidence admitted in this case, it appears that Mr. Ling filed the application only so that he could later say that he had done something in furtherance of the joint venture.

With US Fine Foods unable to export seafood from the United States, Mr. Ling decided to seek NOAA certification for his existing business, Euam Fisheries. Euam Fisheries already had FDA certification, a pre-requisite to application to the NOAA Seafood Inspection Program. Amazingly, Mr. Ling sought and obtained Ms. Li's assistance in the Euam Fisheries application. Ms. Li had a food safety certification and wanted to learn more about the export business. But Mr. Ling hid from Ms. Li his intent to export blue crabs using Euam Fisheries rather than US Fine Foods. When Ms. Li discovered his intent, Mr. Ling assured her that he would pursue exports through US Fine Foods when that became possible and that US Fine Foods would share in the profits from exports completed by Euam Fisheries. But, as before, these assurances were false. Mr. Ling never intended to export crabs for the benefit of the joint venture. In the end, Mr. Ling completed only two export sales of crabs through Euam Fisheries, resulting in a relatively small revenue. None of the proceeds made it to the US Fine Foods account or to Mr. Wang.

In April 2017, as Mr. Ling no doubt expected, Euam Fisheries suffered a fatal financial blow when default judgment was entered against it in the amount of $1.5 million. Mr. Ling continued to keep Mr. Wang in the dark about his financial condition. Mr. Ling strung Mr. Wang along though the spring of 2017. When the first personal loan promissory note came due in April, Mr. Wang agreed to an extension. Mr. Wang had no inkling of the impending doom until July 2017, when Euam Fisheries' landlord filed eviction proceedings. The Euam Fisheries warehouse was the location of all of the equipment Mr. Ling was to provide for the

joint venture. Without that location, the joint venture would be no more. Thus, still believing Mr. Ling intended to move forward in good faith with the joint venture, Mr. Wang paid past-due rent for Euam Fisheries. Mr. Wang did not realize he was throwing good money after bad.

On September 10, 2017, Hurricane Irma made landfall in South Florida. Euam Fisheries was without power for two weeks and lost its entire seafood inventory. Mr. Ling's business completely collapsed. In early October 2017, in need of funds to pay his son's college tuition, Mr. Wang demanded payment on the three promissory notes. Mr. Ling asked for more time, but in the end never made a payment. In October 2017, Euam Fisheries's landlord completed their eviction.

While Hurricane Irma was the ultimate cause of the demise of Euam Fisheries, it was not the cause of the harm to Mr. Wang. From the start, as Mr. Wang provided funds for the joint venture and personal loans to Mr. Ling, Mr. Ling spent the money as quickly as he could. Mr. Ling always intended to use the funds to try to shore up his existing business, Euam Fisheries, and to pay his personal expenses. He never intended to repay anything to Mr. Wang.

Mr. Ling was not a credible witness. In numerous instances, he would begin with an answer he apparently thought favorable to his position, and then on further questioning alter his answer to better fit his needs. The only thing consistent about Mr. Ling's testimony was his evasiveness. Not only did Mr. Ling's testimony often flatly contradict Ms. Li's wholly credible testimony, but Mr. Ling's testimony often flew in the face of the documentary evidence.

Mr. Ling testified that he never received the $60,000 in cash personal loans represented by the three promissory notes, and claimed that he executed those promissory notes in connection with the Joint Venture Agreement. This testimony was not believable.

7

Ms. Li testified credibly about each of the promissory notes and the cash she delivered to Mr. Ling on behalf of Mr. Wang.

Quixotically, Mr. Ling testified that the $1.5 million un-appealed default judgment against Euam Fisheries did not actually mean that Euam Fisheries owed $1.5 million. He claimed Euam Fisheries had been current on its rent in spite of the landlord's eviction action and Euam Fisheries's own stipulation as to the amount owed. Without any evidence at all, he claimed that Mr. Wang had conspired with Euam Fisheries's landlord to evict Euam Fisheries and seize its equipment for their own benefit. The Court gives no weight to Mr. Ling's apparent smoke screen.

In total, based on Mr. Ling's knowingly false promises, Mr. Wang provided $148,109.51 in business and personal funding, consisting of investments and funds paid on behalf of the joint venture in the amount of $88,109.51 and personal loans in the amount of $60,000. Mr. Wang received nothing in return.

## Applicable Law

Section 523(a)(2)(A) provides an exception to discharge for debts obtained through "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prevail under this provision, a creditor must show the debtor made a false representation, the debtor intended to deceive the creditor, the creditor justifiably relied on the false representation, and the deception caused the creditor's loss. *In re Bilzerian*, 1278, 1281 (11th Cir. 1998).

Actual fraud includes "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id.* (quoting *Blacksmith Investments, LLC v. Woodford (In re Woodford)*, 403 B.R. 177, 185 (Bankr. D. Mass. 2009)); *In re Bentley*, (quoting *In re Howard*, 261 B.R. 513, 517 (Bankr. M.D. Fla. 2001)). Actual fraud

does not require an affirmative misrepresentation so long as fraud exists alongside wrongful intent. *See Husky Int'l Electronics, Inc. v. Ritz*, 578 U.S. 356, 360 (2016).

False statements regarding a debtor's intended actions can support an exception to discharge, *In re Wagner*, 492 B.R. 43, 53 (Bankr. D. Colo. 2013), as can false statements about the purpose of a loan, *In re Johnson*, 638 B.R. 782, 793-94 (Bankr. C.D. Cal. 2022). However, failure to perform a contractual obligation will not result in non-dischargeability unless the creditor proves the debtor had no intention to perform at the time the debtor entered into the agreement. *See e.g., In re Crawford*, 476 B.R. 890, 896 (Bankr. W.D. Pa. 2012); *In re Hernandez-Abreu*, 506 B.R. 307, 312 (Bankr. S.D. Fla. 2014); *In re Giguinto*, 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008). "Intent not to perform may be inferred from the fact that the debtor failed to take any steps to perform under the contract." *In re Viciedo*, 612 B.R. 233, 239 (Bankr. M.D. Fla. 2020).

A debtor's silence in the face of a duty to disclose can constitute false pretenses. *In re Rensin*, 597 B.R. 177, 185 (Bankr. S.D. Fla. 2018). Non-dischargeability for false pretenses also includes "implied misrepresentations or conduct intended to create and foster a false impression." *Id.* (quoting *Ershowsky v. Freed (In re Freedman)*, 431 B.R. 245, 256 (Bankr. S.D. Fla. 2010)).

Whether a creditor justifiably relied on a debtor's misrepresentation turns on whether the creditor should have known the representation was false "from a cursory glance" or a red flag should have warned the creditor. *Field v. Mans*, 516 U.S. 59 (1995). In this inquiry, the Court takes into account the individual creditor's knowledge and experience and facts that are readily observable to the creditor. *Id.* at 72.

Section 523(a)(2)(B) provides an exception to discharge if a creditor can prove the debtor made a materially false written representation respecting the debtor's or an insider's

9

financial condition, the debtor did so with the intent to deceive, and the creditor reasonably relied on the representation. A statement about a single asset may qualify as a statement respecting the debtor's financial condition. *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1757 (2018).

In an action under 11 U.S.C. §§ 523(a)(2)(A) or (B), the plaintiff has the burden of proof by a preponderance of the evidence.

### Discussion

Mr. Wang seeks relief under 11 U.S.C. § 523(a)(2)(A) on theories of misrepresentation and false pretenses, and under 11 U.S.C. § 523(a)(2)(B) for a materially false writing relating to Mr. Ling's or his company's financial condition. Under section 523(a)(2)(A), Mr. Wang alleges that Mr. Ling never intended to perform his obligations under the Joint Venture Agreement or any of the three promissory notes, failed to disclose the extent of his existing debts, and misrepresented the purpose of the personal loans he obtained from Mr. Wang. Under section 523(a)(2)(B), Mr. Wang alleges that the promise to provide equipment in the Joint Venture Agreement qualifies as a statement regarding Mr. Ling's or Euam Fisheries's financial condition and that the statement was false.

**False Representations and False Pretenses**

Mr. Ling never intended to perform his obligations under the Joint Venture Agreement or to repay the personal loans represented by the three promissory notes. Mr. Ling's promises and agreements in the Joint Venture Agreement, and his promises to pay in the three promissory notes, were knowingly false when made. Mr. Ling intended only to get Mr. Wang's money, but do nothing in return.

Mr. Ling argues that this is merely a story of a business deal gone sour. In support of his contention that he intended to pursue the joint venture, Mr. Ling points to the application to NOAA on behalf of US Fine Foods and the two completed exports of live crabs through

10

Euam Fisheries. As discussed above, the Court believes Mr. Ling's application to NOAA on behalf of US Fine Foods was simply part of his sham, and neither US Fine Foods nor Mr. Wang received anything from the two export sales of crabs. To the contrary, all of the credible evidence points to the conclusion that Mr. Ling, in dire need of cash but concealing his financial distress from Mr. Wang, took whatever Mr. Wang provided for Mr. Ling's personal benefit, as quickly as Mr. Wang could deposit or deliver the funds, and when those were depleted he asked for more. From the very beginning, Mr. Ling took what he could, without any intention or expectation that he would repay it.

Mr. Ling represented that he was experienced in export of seafood to China and could make the joint venture a success. While Mr. Wang knew Mr. Ling had experienced some cash flow concerns at Euam Foods, Mr. Ling kept Mr. Wang in the dark about Mr. Ling's dire financial condition and the imminent failure of Euam Fisheries. Mr. Wang justifiably relied on Mr. Ling's promise to perform under the Joint Venture Agreement and promises to repay the promissory notes.

In justified reliance on Mr. Ling's knowingly false promises and representations, Mr. Wang advanced an aggregate of $148,109.51, for which Mr. Wang received nothing. This debt will be excepted from discharge under section 523(a)(2)(A).

Mr. Wang also seeks relief under section 523(a)(2)(A) under other theories. Mr. Wang argues that Mr. Ling represented that he needed the $60,000 in personal loans to ensure Euam Fisheries's cash flow and for his own expenses and that this was false, but it appears that this is indeed how Mr. Ling used the personal loans. The real issue is not how Mr. Ling claimed he would use the funds, but that he never intended to repay them. Mr. Wang argues that Mr. Ling failed to disclose the full extent of his existing and impending debt, which was insurmountable, and that this constitutes false pretenses. But Mr. Ling had no independent legal duty to disclose the full extent of his financial distress to Mr. Wang. While Mr. Ling's

11

concealment is evidence that supports the Court's conclusion that, contrary to his promises, Mr. Ling took Mr. Wang's money without the intent to repay it, that concealment does not by itself support relief.

**False Written Statements Relating to Financial Condition**

Mr. Wang argues that when Mr. Ling promised in the Joint Venture Agreement that he would provide necessary equipment to the joint venture, this was a statement concerning the financial condition of Mr. Ling or his insider, Euam Fisheries, which supports relief under section 523(a)(2)(B). Mr. Wang argues that Mr. Ling's agreement in the Joint Venture Agreement includes an inherent representation that Mr. Ling or Euam Fisheries owned the equipment Mr. Ling agreed to provide for use in the joint venture. But this inherent statement was in fact true. Mr. Ling, through his existing company Euam Fisheries, did in fact own equipment that could have been used for the joint venture. Mr. Ling's falsehood was not that he controlled that equipment, but that he never intended to facilitate the joint venture. The evidence in this case does not support alternative relief under section 523(a)(2)(B).

## Conclusion

For the reasons stated above, the Court will enter judgment in favor of plaintiff Guan Zu Wang, against defendant Xiao Ling, ruling that Mr. Wang's claim in this case, in the amount of $148,109.51, is excepted from discharge under 11 U.S.C. § 523(a)(2)(A). All alternative relief requested in the Amended Complaint will be denied. The Court will enter separate final judgment in favor of the plaintiff consistent with this Memorandum Opinion.

###

Copy to:

All parties of record.